## CHAMPLIN REFINING CO. v. MAGNOLIA PETROLEUM CO. et al.

No. 25618.    Sept. 29, 1936.

Rehearing Denied Nov. 17, 1936.

Scarritt & Champlin, for plaintiff in error.

W. H. Francis, B. B. Blakeney, Hubert Ambrister, V. C. Mieher, R. Y. Stevenson, L. O. Carson, and Ray S. Fellows, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Noble county by the Champlin Refining Company, hereinafter referred to as plaintiff, against the Magnolia Petroleum Company, Stanolind Oil & Gas Company, and Amerada Petroleum Corporation, to cancel an oil and gas lease held by defendants, to quiet title to a leasehold estate claimed by plaintiff, and for an accounting. Defendants prevailed in the trial court, and plaintiff has appealed.

On November 6, 1922, William S. Kolb and Carolyn K. Kolb, his wife, executed and delivered to H. C. Donahue an oil and gas mining lease upon the N. W. ¼ of section 33, twp. 20 north, range 2 west, in Noble county, Okla. On April 19, 1926, the lease was acquired by the Magnolia Petroleum Company. Thereafter the Stanolind Oil & Gas Company acquired the lease on 120 acres of the property by assignment from the Magnolia, and in turn assigned an undivided one-half interest therein to the Amerada Petroleum Corporation. The lease on the remaining 40 acres was retained by the Magnolia Petroleum Company.

The lease was for a term of ten years and "as long thereafter as oil or gas or either of them is produced from said land by the lessee." On October 12, 1932, the Stanolind Company began moving in material on the lease preparatory to drilling a well thereon. On October 25, 1932, a well was spudded in and drilling continued without delay. A producing well was completed in February, 1933, and since that time has been producing oil in paying quantities. No oil was discovered until after November 7, 1932. On that date the well was about 1,500 feet deep. It is located approximately in the center of the quarter-section of land covered by the lease.

On June 9, 1932, L. Susanna Kolb (who had acquired a fee-simple title to the land) executed and delivered to O. S. Alloway an oil and gas lease upon the property hereinabove described for a term of five years. On September 13, 1932, for a substantial consideration this lease was transferred to the Champlin Refining Company, plaintiff herein.

Plaintiff seeks the cancellation of the lease held by defendants on the ground that it expired by its own terms on November 6, 1932, and that the commencement of a well prior to the expiration date of the lease and the completion thereof after said date to production would not extend the lease beyond its primary term.

The exact question thus presented was before this court in the case of Simons v. McDaniel, 154 Okla. 168, 7 P. (2d) 419. In that case it was held that an oil and gas lease for five years, providing in the development clause that the lease should terminate "if no well be commenced" on or before certain dates "unless" rentals were paid, would not expire where a well was commenced on the last day of the term of the lease and was thereafter diligently completed to production, and when production was found in paying quantities said lease would continue for as long as oil or gas was produced. The development clause and habendum clause in the lease involved in this case are identical with the development and habendum clauses in the lease construed in the case just cited. Plaintiff admits that said case is decisive of the issue presented herein, but challenges the correctness of the rule announced in that opinion. We have examined with care the authorities cited and relied upon by plaintiff. Many of these authorities were before the court when the question was formerly considered and appear in the lengthy dissenting opinion of Chief Justice McNeill (154 Okla. 172). The expressions of opinion by the courts and the text writers are highly persuasive to the point that oil must be found and produced in paying quantities in order to extend the term of a lease beyond its primary term. It does not appear, however, that the identical proposition involved in this case was before the court until presented in the case of Simons v. McDaniel, supra. The opinion in that case is sup-

ported by well-considered authorities and presents a sane and sensible construction of the terms of an oil and gas lease, where construction is necessary by reason of ambiguous, if not conflicting, provisions contained in the lease. The opinion was promulgated on January 19, 1932, prior to the time plaintiff acquired its lease. The rule announced therein no doubt has been widely relied on in this state. We deem it proper to adhere to said rule.

As a second proposition, plaintiff contends that the Magnolia Petroleum Company, and the other defendants as its privies, are estopped from denying that their lease expired at the end of the primary term. Plaintiff relies upon certain telephone conversations between H. H. Champlin, president of the plaintiff company, and one Louis Campbell, head of the land department of the Magnolia Petroleum Company. This evidence was summarized by the trial court in his findings of fact as follows:

"Again on September 7, 1932, H. H. Champlin, president of the Champlin Refining Company, and acting for p aintiff, at Enid, Oklahoma, called Campbell above mentioned at Oklahoma City, over long distance telephone, and told him there was quite a little stir up in the area of this land and things were beginning to brighten up and it looked as if the Wentz well might be a producer; and that this lease, meaning the Alloway lease, was being offered to the Champlin Refining Company again for $8,-000, plus the commission; and he, Campbell, said it was too high. Champlin offered to buy it for him if he, Campbell, wanted it, or Champlin would take a half interest with them, and he, Campbell, said they wouldn't buy it—it was too high. Champlin asked Campbell if it was his understanding that the well had to be completed by November 6th or just commenced by November 6th; and he, Campbell, said it had to be completed by November 6th; and he, Campbell, further said they would not buy the Alloway lease, and he, Campbell, had no objection if the plaintiff bought it; and Champlin went ahead and bought it and paid $8.000 for the lease (Alloway lease) and $300 commission to Mr. Williams."

In the case of Crary v. Dye, 208 U. S. 515, 52 L. Ed. 595, it is said:

"The principle of estoppel is well settled. It precludes a person from denying what he has said or the implication from his silence or conduct upon which another has acted. There must, however, be some intended deception in the conduct or declarations, or such gross negligence as to amount to constructive fraud. Brant v.

Virginia Coal & I. Co., 93 U. S. 326, 23 L. Ed. 927; Hobbs v. McLean, 117 U. S. 567, 29 L. Ed. 940, 6 Sup. Ct. Rep. 870. And in respect to the title of real property, the party claiming to have been influenced by the conduct or declarations must have not only been destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

In the case of National Surety Co. v. Craig, 94 Okla. 63, 220 P. 943, it is said:

"All parties in a transaction stand charged with equal knowledge of the law applicable thereto, and with the legal effect of their acts. If the parties stand upon an equal plane, misconstruction of the legal effect of the act cannot become the basis of an equitable estoppel for one against the other."

See, also, Antrim Lumber Co. v. Wagner, 175 Okla. 564, 54 P. (2d) 173.

It is plaintiff's theory that except for the statement of Campbell that the well would have to be completed by November 6, 1932, plaintiff would not have purchased the lease. It is shown, however, that all the material facts relating to the lease then in force were known to both parties. As to whether the commencement of a well prior to the expiration date of the lease and the subsequent discovery of oil would extend its terms is a question of law upon which this court had recently spoken. The lease at that time was upon unproven territory. We may assume that neither party knew whether or not there would be production on the property covered by the lease. It had not been determined at that time whether the terms of the existing lease would be extended by the subsequent discovery of oil in paying quantities. Under no construction of the facts in this case can it be determined that there was actual misrepresentation, intended deception, or such gross negligence as amounts to constructive fraud.

The finding of the trial court on the issue of estoppel was in favor of defendants. Said finding is hereby approved.

The judgment is affirmed.

RILEY, BUSBY, WELCH, and GIBSON, JJ., concur. PHELPS, J., specially concurring. McNEILL, C. J., and CORN, J., dissent. BAYLESS, J., absent.

PHELPS, J. (specially concurring). I think the correct rule is laid down in Chief

Justice McNeill's dissenting opinion in Simons v. McDaniel, 154 Okla. 172, 7 P. (2d) 419, and cases therein cited, quoted from, and discussed, but this court having refused to accept those views and adopted the majority opinion, which has become the law of this state, I feel that I am bound by the rule therein laid down, and therefore concur in the conclusion reached herein.