CRANE v. HOWARD et al. (two cases).

Nos. 34089, 34090.    Oct. 30, 1951.

Rehearing Denied Feb. 5, 1952.

Application for Leave to File Second Petition for Rehearing Denied April 8, 1952.

*243 P. 2d 998.*

Chas. W. Pennel, Bartlesville, and Walter L. McVey, Laurence McVey, and Walter L. McVey, Jr., Independence, Kan., for plaintiff in error.

F. W. Files, Chas. R. Gray, and W. N. Palmer, Pawhuska, for defendants in error.

WELCH, J.   In these cases the same parties are involved directly or indirectly, and in both cases the same subject-matter is involved; to wit:   The Estate of H. O. Crane, deceased.

H. O. Crane died testate; he was survived by his wife, Birdie Crane, and two children by a prior marriage, a daughter, Frankie M. Day, and a son, Virgil Crane.   In his will there was bequest of certain property and a sum of money to his wife, Birdie Crane. The will contained this provision:

"That in the event the said Birdie Crane protests or objects in any way to this devise and bequest, I then direct that she be limited to the inheritance provided for in a prenuptial agreement entered into by the said

Birdie Crane and H. O. Crane prior to our marriage."

There were separate bequests of property to his two children of the prior marriage.

The will was admitted to probate in county court and D. C. Howard and John M. Kilbie became executors of the estate as provided by the will. Birdie Crane, the widow, filed an election to renounce the will and take inheritance according to law. The other devisees named in the will and the executors filed protest against the election and alleged the existence of an antenuptial agreement executed by H. O. Crane and Birdie Crane, then Birdie Byron, as fixing her rights of inheritance. Upon determination of the issue in county court an appeal was perfected and the administration proceedings and case were transferred to district court.

Birdie Crane had commenced an action in district court against the executors for an accounting, and to quiet title to certain property held and claimed by the executors as property of the estate of H. O. Crane, deceased. The plaintiff alleged that said certain property was a part of the community estate which came into existence during her married life with H. O. Crane, and that she was the owner of a one-half interest in said property, and that certain funds in the hands of the executors were the proceeds of the sale of property a part of the community estate and of which she owned a one-half interest.

The executors filed answer alleging the existence of an antenuptial contract between H. O. Crane and Birdie Crane whereby they agreed upon separate ownership of all their property then and in the future, and that by reason thereof there was no community property belonging to Birdie Crane and H. O. Crane at the time of his death or at any time.

On trial of the two cases in district court, and in a reference to issues of fact common to both cases, the trial judge made and entered identical findings of fact, stated as follows:

"That the joint executors and children of H. O. Crane have established the fact that Birdie Byron entered into a prenuptial contract on May 15, 1935, and that thereafter, and during the month of August, 1935, the said H. O. Crane and Birdie Crane entered into a postnuptial contract superseding and modifying the prenuptial contract."

Under the above finding in the case of probate jurisdiction the court stated the following conclusion:

"That that portion of the estate should be distributed and paid over to Birdie Crane as provided in the contract made and entered into between the said Birdie Crane and H. O. Crane during the month of August, 1935, and that the balance of said estate should be distributed to Frankie M. Day and Virgil Crane as per the terms and provisions of the last will and testament of H. O. Crane, deceased."

Judgment was entered decreeing distribution of the estate in accordance with the above-stated conclusion and Birdie Crane has appealed.

In the case involving claim to property as vesting under the Community Property Law, the trial court, after findings of fact as above quoted, stated the following conclusion:

"That the income, rents, profits and increase from the separate property of H. O. Crane was covered by the nuptial contracts between the said H. O. Crane and Birdie Crane, and that she is not entitled to recover in this action."

Judgment was entered accordingly, and Birdie Crane has appealed.

The two appealed cases have been consolidated in this court for the purpose of briefing.

Birdie Crane, the appellant in each of the cases, will hereinafter be referred to as the plaintiff, and Frankie M. Day, Virgil Crane, and the joint executors of the estate of H. O. Crane,

deceased, will be referred to as the defendants.

Common to both cases were questions concerning the existence and effectiveness of agreements entered into by H. O. Crane and the plaintiff.

H. O. Crane and the plaintiff were married on the 15th day of May, 1935. The H. O. Crane will, executed in June, 1944, contained a reference to a prenuptial agreement entered into by said parties. Evidence was introduced to show that after the marriage, and in August, 1935, the said parties entered into a written agreement, which postnuptial agreement contained a reference to an antenuptial agreement. We find no competent evidence to establish the terms of any prenuptial agreement in effect at the date of the execution of the will of H. O. Crane and at the time of his death. The postnuptial agreement of August, 1935, contained the following provisions:

" . . . that all contracts heretofore entered into between the parties hereto concerning their property rights and particularly the antenuptial agreement dated May 15, 1935, be, and the same are hereby cancelled and set aside and are no longer binding upon the parties hereto. . . ."

The postnuptial agreement contained provision, in substance, that each of the parties should have right to separately use, possess, mortgage, convey and dispose of their respective properties, and likewise all properties each might thereafter acquire and all rents, issues and profits thereof in the same manner and to the same extent as if the marriage had not taken place; that each party waives all right to inherit or take any part of said separate property of the other to the same extent as if there were no marriage; that a surviving party may not sue for, claim or demand any right or interest in or out of the separate property of which a deceased party might die seized, except as provided in the terms of said written agreement.

The agreement recited mutual love as consideration, and as further consideration to the plaintiff, that H. O. Crane should pay to plaintiff a certain sum per month so long as plaintiff lived with the said H. O. Crane as his wife, and that during such time the plaintiff is designated and shall remain the sole beneficiary of a certain described paid-up life insurance policy on the life of the said H. O. Crane, and further that upon the death of the said H. O. Crane the plaintiff shall be paid from his estate a specified sum of money or take certain property at her choice.

The judgments rendered by the trial court rest upon a determination that the aforementioned postnuptial contract precluded plaintiff from inheritance under the laws of succession and precluded the acquirement of a community estate between the parties.

Plaintiff contends the court erred in holding she could not elect to take under the law of succession notwithstanding the postnuptial agreement and in finding that the postnuptial agreement superseded and annulled her claims to community property.

Upon a determination of these contentions favorable to the plaintiff, further contentions of the plaintiff require no discussion.

In re Blaydes' Estate, 202 Okla. 558, 216 P. 2d 277, it was held:

"A husband and wife cannot, by contract to make a conjoint will, and by the making of such will in pursuance thereto, nullify the provisions of 84 O.S. 1941 §44, known as the 'forced heir statute.' "

Section 44, supra, which authorizes disposition of property by will, contains this proviso:

" . . . but no spouse shall bequeath . . . away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law; . . ."

The statute contains a single exception to the above prohibition:

" . . . that a will shall be subservient to any antenuptial marriage contract in writing; . ..."

At common law a postnuptial agreement between husband and wife, whereby one spouse agrees to release his or her rights and interests, as surviving spouse or otherwise, in the estate of the other, or agrees not to dissent from the will of the other, was void. 26 Am. Jur., Husband and Wife, §318. In said section 318 it is stated that:

"Such agreements are, of course, valid and enforceable under the Married Women's Act to the extent that the spouses can contract with each other."

In the notes under the above statement cases are cited from various states construing the applicable statutes of the respective jurisdiction.

In Smith v. Johnson, 144 Neb. 769, 14 N. W. 2d, 424, the Supreme Court of Nebraska said:

"Postnuptial contracts entered into by husband and wife while complete marriage relation exists settling their property rights including their respective rights of inheritance in property of the other are invalid. Comp. St. 1929, §§30-105, 30-106."

In the opinion, after reference to statutory provisions of that state which prescribe a method whereby the right of inheritance of a husband or wife may be barred in the other's estate by an antenuptial contract, the court said:

" . . . It will be observed that section 30-106 only refers to a contract before marriage and is silent as to a postnuptial contract between husband and wife. This silence we think is significant. Had the Legislature desired to change the common-law rule it would have been a simple matter to have included postnuptial contracts. We think the statutory method of barring the right of inheritance is limited to the methods outlined in the foregoing sections of the statute."

Our statutes authorizing spouses to contract with each other do not extend to the subject of wills, or to an agreement of one not to dissent from the will of the other.

In the Blaydes case, supra, there is a reference to 32 O. S. 1941 §5 in connection with the proviso of section 44, supra. Said section 5 provides:

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, . . ."

In the Blaydes case, we said:

"A surviving spouse has no actual interest in the property of her spouse until the death of the latter, and therefore has no existing right which she can dispose of by contract. Some courts hold that an election may be made prior to the death of the spouse, but we think the sounder rule is that such cannot be done. To hold otherwise would be to say that the parties can do indirectly what the statute prohibits. . . ."

"Any exception to the application of the proviso in our statute is a matter for legislative consideration, and not for this court."

We adhere to the principle announced in the Blaydes case and herein hold that the postnuptial agreement between H. O. Crane and the plaintiff was without effect on plaintiff's right to dissent from his will and take of the estate of H. O. Crane, deceased, through succession by law.

It is well settled that if a surviving spouse elects to take under the law instead of under the will, the will remains effective as to the remainder of testator's property. In re Carother's Estate, 196 Okla. 640, 167 P. 2d 899.

The judgment in Case No. 34089 is reversed, with directions that judgment be entered by the trial court providing for the distribution of the estate, in accord with the views herein expressed.

By Act of the Legislature of 1945, Laws 1945, p. 118, §3, 32 O. S. Supp. 1945 §68, it was provided:

"All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that which is the separate property of either as hereinabove defined, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved."

In preceding sections of the Act of 1945, Laws 1945, p. 118, §§1, 2, 32 O. S. Supp. 1945 §§66, 67, it was provided that all property of the husband and the wife, owned or claimed by each respectively before marriage or before the effective date of the Act, whichever is later, and that acquired afterwards by gift, devise, or descent, or received in compensation for personal injuries, shall be, respectively, his or her separate property.

The 1945 Act was approved April 28, 1945, and became effective 90 days after April 26, 1945, the date of adjournment of the enacting Legislature. (The 1945 Act was repealed in 1949.)

H. O. Crane died on May 6, 1946. Under the terms of the 1945 Act all property acquired by either H. O. Crane or the plaintiff in that period of time from the effective date of the Act until May 6, 1946, became community or common property of which each became vested with an undivided one-half interest with the exception of such property as was acquired by gift, devise, or descent, or received as compensation for personal injury.

The record in case No. 34090 reflects there was acquisition of property by H. O. Crane after the effective date of the 1945 Act and that such acquired property was not of one of the excepted classes mentioned in the 1945 Act. The judgment entered by the trial court of the effect to deny plaintiff's claim of ownership of an undivided one-half interest in such property as was acquired after the effective date of the 1945 Act rests on a determination that such one-half interest never vested in plaintiff as provided by statute, because of the postnuptial agreement of the parties entered into in August, 1935.

The pertinent terms of the written agreement of 1935 were that each party agreed to release all interest in the separate property of the other and as to all such separate property as acquired in the future.

32. O. S. 1941 §§4, 5, provide that neither husband nor wife has any interest in the separate property of the other except as results from the duty of one to support the other, and that neither can be excluded from the other's dwelling.

It seems obvious that at the time the agreement was executed, it could be given meaning only as an attempted release by each of any right of support from the separate property of the other and of the right to the use of the other's dwelling.

We do not perceive that the agreement was entered into in contemplation of the future enactment of any community property law or the law as embodied in the enactment of 1945. Nor do we perceive any reason whereby such an agreement may be held as effective to prevent the vesting of property under the terms of the 1945 Act.

The judgment in case No. 34090 is reversed, and with directions that on further proceedings such judgment as rendered be not inconsistent with views herein expressed.

ARNOLD, C. J., and CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. GIBSON, J., dissents.